# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 25, 2012

Lyle W. Cayce
Clerk

No. 11-60147

JOSE VLADIMIR ORELLANA-MONSON; ANDRES EDUARDO
ORELLANA-MONSON,

      Petitioners

v.

ERIC H. HOLDER, JR., U. S. ATTORNEY GENERAL,

      Respondent

Petition for Review of an Order of the
Board of Immigration Appeals

Before HIGGINBOTHAM, GARZA, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Salvadoran citizens Jose Orellana-Monson and his brother Andres entered the United States on October 22, 2005. They were charged with being in the United States without having been admitted or paroled and claimed asylum because of Jose's political opinions and membership in a particular social group. The Board of Immigration Appeals ("BIA") rejected this argument. The Orellana-Monsons appeal. We reject their claim and affirm the ruling of the BIA.

No. 11-60147

## FACTS AND PROCEEDINGS

The Petitioners' argument revolves around a particularly violent and aggressive gang, Mara 18, which is widespread in Jose and Andres's area of El Salvador. The boys, ages 11 and 8 at the time of their initial escape from El Salvador, allege that they would have been subjected to repeated harassment and violence if they had remained in their hometown.

Mara 18, also known as the 18th Street Gang, operates throughout the United States, Central America, and Mexico. El Salvador has lenient juvenile justice laws, and Salvadoran gangs recruit teenagers. Gangs encourage juvenile criminal activity, and they train new members in crimes such as drug dealing and murder. The gangs operate openly in El Salvador.

Before fleeing El Salvador, the boys lived with their maternal grandmother, her husband, and several other relatives in Zacatecoluca. The boys' mother, Teresa Turcios, left El Salvador for the United States in 2001 after an earthquake destroyed her residence and caused her to lose her job.  She lives in Houston on temporary protected status with her husband Freddy, also a Salvadoran national with temporary protected status. Teresa did not marry Jose and Andres's natural father, a habitual criminal who played no role in the boys' lives.

According to Petitioners, one of Mara 18's local leaders, a man Jose knew only as Juan, lived directly across the street from the boys. Juan attempted to recruit Jose, who responded that he was unsure whether he wanted to be a gang member. He was afraid to flatly refuse. Juan threatened to kill Jose and his family. Juan returned one night when Jose was home alone and forced Jose at gunpoint to rob a jewelry store.

The boys' grandmother arranged for the boys to flee to the United States. The boys' uncle took them to the U.S./Mexico border where a friend helped them

2

No. 11-60147

swim across the Rio Grande. The boys waited next to a Border Patrol truck until they were discovered and phoned their mother from the local immigration office.

The Orellana-Monsons maintained that they were refugees eligible for asylum because they would be persecuted on account of their membership in a particular social group. Jose contended that he is a member of a social group consisting of Salvadoran males, ages 8 to 15, who have been recruited by Mara 18 but have refused to join due to a principled opposition to gangs. Andres contended that he belongs to a social group consisting of siblings of members of Jose's social group or, alternatively, family members of Jose and that Mara 18 likely would impute Jose's anti-gang political opinion to him.

Jose testified that he was morally and conscientiously opposed to Mara 18 because membership in the gang meant harming and robbing other people. He feared the members of Mara 18 "[b]ecause they were very bad and [he] had to do what they told [him]." Andres testified that he had not been recruited by Mara 18 due to his age and that, while he does not want to join a gang, he believed Mara 18 would eventually attempt to recruit him. Moreover, Andres believed gang members would kill him if he refused to join.

Teresa Turcios testified that Jose and Andres would have no place to live if they were returned to El Salvador. According to Turcios, the boys' grandmother is elderly and caring for her ailing husband, whose care takes most of the grandmother's time. The boys have no relatives in El Salvador outside of Zacatecoluca. In an affidavit, the boys' grandmother swore that Mara 18 members had come to her house asking about Jose and Andres and threatened to kill her.

## PRIOR PROCEEDINGS

This case has a long procedural history including a prior argument before this court. Initially, the Immigration Judge (IJ) found the evidence to be credible but determined that Jose and Andres were ineligible for asylum because the

No. 11-60147

Salvadoran government was attempting to rein in the gangs; because the boys had not been persecuted; because the boys did not qualify as members of any particular social group; and because there was no indication Jose had any political opinions.

The BIA, in a single-member opinion, dismissed the Orellana-Monsons' appeal. The BIA determined that there was no evidence that Juan, the Mara 18 gang member, was motivated to harm Jose on any protected ground. The BIA stated that acts of criminal coercion did not constitute persecution on account of one of the protected grounds required to establish a claim for asylum or withholding of removal. The BIA did not explicitly analyze whether the Orellana-Monsons were members of relevant social groups for asylum purposes.

The Orellana-Monsons appealed to this court, where we initially denied their petition for review because they had failed to demonstrate that they were members of any particular social group and failed to show that opposition to gangs constitutes a political opinion. *Orellana-Monson v. Holder*, 332 F. App'x 202, 203-04 (5th Cir. 2009)(unpublished)(per curiam). The Orellana-Monsons petitioned for rehearing en banc, contending that this court erred by using the BIA's analysis in *In re S-E-G-*, 24 I. & N. Dec. 579, 584 (BIA 2008), an opinion which they argued was rendered moot—and possibly nonprecedential—when the parties jointly moved for, and obtained, an administrative remand. According to the Orellana-Monsons, reliance on *In re S-E-G-* constituted a drastic change in this court's standard for determining what constitutes a particular social group. This court treated the petition for en banc rehearing as a petition for panel rehearing, and the panel granted the motion for rehearing and withdrew the original opinion. *Orellana-Monson v. Holder*, No. 08-60394 (5th Cir. Dec. 17, 2009) (unpublished order). The panel heard oral argument, vacated the BIA's decision and remanded the case for the BIA to explain the basis for its decision. The court stated:

4

No. 11-60147

It is unclear from the BIA's decision whether it concluded (1) that the Orellanas have not established a protected ground—that they are members of particular social groups; (2) that even if the Orellanas' alleged social groups are cognizable under the INA, there is not sufficient evidence that they fear persecution because of their membership in those social groups; or (3) both.

*Orellana-Monson v. Holder*, No. 08-60394, slip op at 4 (5th Cir. Mar. 15, 2010) (unpublished) (per curiam).

On remand, the BIA, in a single-member ruling, determined that Salvadoran young adults who were subjected to, and who rejected, recruitment efforts of gangs, and the families of such young adults, did not possess the social visibility and particularity to constitute "membership in a particular social group." The BIA explained that Jose and Andres did not possess characteristics that would cause others to recognize them as members of the claimed social groups. Moreover, the proposed social groups were overly broad and therefore lacked the requisite particularity. Because they failed to satisfy the burden of showing past persecution on an enumerated ground, the Orellana-Monsons were not entitled to a presumption of holding a well-founded fear of future persecution. They also failed to independently establish a well-founded fear of persecution on an enumerated ground. The BIA determined that the Orellana-Monsons could not satisfy the burden for obtaining asylum; could not satisfy the higher standard for withholding; and could not satisfy the standard for relief under the Convention Against Torture (CAT). The BIA dismissed the Orellana-Monsons' appeal. The Orellana-Monsons filed a timely petition for review.

## STANDARD OF REVIEW

We review only the BIA's decision, "unless the IJ's decision has some impact on the BIA's decision." *Wang v. Holder*, 569 F.3d 531, 536 (5th Cir. 2009). Here, the BIA issued its own opinion and elaborated on its own reasoning so this

court must review the BIA's decision. This court reviews the BIA's legal conclusions *de novo* "unless a conclusion embodies the [BIA's] interpretation of an ambiguous provision of a statute that it administers; a conclusion of the latter type is entitled to the deference prescribed by *Chevron U.S.A. Inc. v. Natural Resources Defense Council.*" *Singh v. Gonzales*, 436 F.3d 484, 487 (5th Cir. 2006). Under *Chevron*, when reviewing an agency's construction of a statute that it administers, a court must determine first whether Congress has directly spoken to the question at issue. *Chevron U.S.A. Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 842 (1984). If so, the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. *Id.* at 842-43. If not, the court must determine whether the agency's answer is based on a permissible construction of the statute. *Id.* at 843. "If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation." *Id.* at 843-44. Courts give agency interpretations "controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Id.* at 844.

We review the BIA's findings of facts under the substantial evidence standard, which requires that the decision of the BIA be based on the evidence presented and that the decision be substantially reasonable. *Carbajal-Gonzalez v. INS*, 78 F.3d 194, 197 (5th Cir. 1996). It is the factfinder's duty to make credibility determinations, and this court cannot substitute its judgment for that of the BIA or IJ with respect to witnesses' credibility. *Chun v. INS*, 40 F.3d 76, 78 (5th Cir. 1994)(per curiam). Under the substantial evidence standard, reversal is improper unless the court decides "not only that the evidence supports a contrary conclusion, but also that the evidence *compels* it." *Chen v. Gonzales*, 470 F.3d 1131, 1134 (5th Cir. 2006). The petitioner has "the burden of showing that the evidence is so compelling that no reasonable factfinder could reach a contrary conclusion." *Id.*

No. 11-60147

The Attorney General has the discretion to grant asylum to refugees. *Id.* at 1135. A refugee is a person (1) who is outside of his country and is unable or unwilling to return because of persecution or a well-founded fear of persecution and (2) who has demonstrated that "race, religion, nationality, *membership in a particular social group*, or political opinion was or will be at least one central reason" for the persecution. *Tamara-Gomez v. Gonzales*, 447 F.3d 343, 348 (5th Cir. 2006) (emphasis added) (internal quotation marks omitted); *see* 8 U.S.C. § 1101(a)(42)(A) (defining "refugee" to include members of a "particular social group"). "The applicant may qualify as a refugee either because he or she has suffered past persecution or because he or she has a well-founded fear of future persecution." 8 C.F.R. § 208.13(b). "Persecution" includes "'[t]he infliction of suffering or harm, under government sanction, upon persons who differ in a way regarded as offensive . . . , in a manner condemned by civilized governments.'" *Abdel-Masieh v. INS*, 73 F.3d 579, 583 (5th Cir. 1996)(quoting *In re Laipenieks,* I. &N. Dec. 433, 457-57 (BIA 1983). The alien must present "specific, detailed facts showing a good reason to fear that he or she will be *singled out* for persecution." *Faddoul v. INS*, 37 F.3d 185, 188 (5th Cir. 1994). To show a well-founded fear of future persecution, the alien "must show that a reasonable person in the same circumstances would fear persecution if deported." *Jukic v. INS*, 40 F.3d 747, 749 (5th Cir. 1994). The subjective fear of future persecution must be objectively reasonable. *Mikhael v. INS*, 115 F.3d 299, 304 (5th Cir. 1997). The standard for obtaining withholding of removal is even higher than the standard for asylum, requiring a showing that it is more likely than not that the alien's life or freedom would be threatened by persecution on one of those grounds. *Efe v. Ashcroft*, 293 F.3d 899, 906 (5th Cir. 2002). Because the asylum standard is more lenient than the standard for withholding of removal, the failure to establish a well-founded fear for asylum eligibility also forecloses

7

No. 11-60147

eligibility for withholding of removal. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 440-41 (1987).

In order to establish persecution based on membership in a particular group, the petitioners must show that they are members "of a group of persons that share a common immutable characteristic that they either cannot change or should not be required to change because it is 'fundamental to their individual identities or consciences.'" *Mwembie v. Gonzales*, 443 F.3d 405, 414-15 (5th Cir. 2006) (quoting *Ontunez-Tursios v. Ashcroft*, 303 F.3d 341, 352-53 (5th Cir. 2002)); *see In re Acosta*, 19 I. & N. Dec. 211, 233 (BIA 1985). However, "[t]he risk of persecution alone does not create a particular social group" and the term "should not be a 'catch all' for all persons alleging persecution who do not fit elsewhere." *Castillo-Arias v. United States Att'y Gen.*, 446 F.3d 1190, 1198 (11th Cir. 2006).

## DISCUSSION

This case hinges on the BIA's interpretation of the term "particular social group" as found in the Immigration and Nationality Act ("INA"). 8 U.S.C. § 1101(a)(42). The Orellana-Monsons argue that the BIA's decision denying Jose and Andres asylum status through a "particular social group" is an arbitrary departure from prior BIA precedent and an unreasonable interpretation of the INA. The BIA contends that its interpretation of the Act is entitled to *Chevron* deference, that it is not a radical departure from prior interpretations, that their conclusion that Jose and Andres do not qualify for asylum is based on substantial evidence, and that therefore the decision should be affirmed.

The BIA test for determining asylum under the "particular social group" banner requires "social visibility" and "particularity." The BIA relies on the following factors to determine whether a particular social group exists: (1) "whether the group's shared characteristic gives the members the requisite *social visibility* to make them readily identifiable in society" and (2) "whether the

group can be defined with sufficient *particularity* to delimit its membership." *In re A-M-E- & J-G-U-*, 24 I. & N. Dec. 69, 69 (BIA 2007) (emphasis added). Social visibility is determined by "the extent to which members of a society perceive those with the characteristic in question as members of a social group." *In re E-A-G-*, 24 I. & N. Dec. 591, 594 (BIA 2008). Particularity is determined by "whether the proposed group can accurately be described in a manner sufficiently distinct that the group would be recognized, in the society in question, as a discrete class of persons." *In re S-E-G-*, 24 I. & N. Dec. 579, 584 (BIA 2008). Also, "[w]hile the size of the proposed group may be an important factor in determining whether the group can be so recognized, the key question is whether the proposed description is sufficiently 'particular,' or is 'too amorphous . . . to create a benchmark for determining group membership.'" *Id.* The BIA has previously rejected the argument that "persons resistant to gang membership" constitutes a social group. *See In re S-E-G-*, 24 I. & N. Dec. at 583.

Whether or not the BIA's "particularity" and "social visibility" requirements for defining membership in a "particular social group" are valid, is an issue of first impression in this circuit. However, we do not come to this issue with a blank slate, as numerous unpublished decisions in this circuit have previously relied on the BIA's interpretation. See, e.g., *Bayavarpu v. Holder*, 390 F. App'x 353, 354 (5th Cir. 2010); *Bermudez-Merino v. Holder*, 372 F. App'x 498, 500 (5th Cir. 2010); *Mendoza-Marquez v. Holder*, 345 F. App'x 31, 32 (5th Cir. 2009). In other unpublished cases, we have rejected claims involving similar arguments that the refusal to join gangs can define a particular social group. See, e.g., *Hernandez-Navarrette v. Holder*, 433 F. App'x 251, 253 (5th Cir. 2011); *Bermudez-Merino*, 372 F. App'x at 500; *Guevara-Lopez v. Holder*, 351 F. App'x 953, 954 (5th Cir. 2009); *Cua-Tumax v. Holder*, 343 F. App'x 995, 997 (5th Cir. 2009); *Mendoza-Marquez*, 345 F. App'x at 32; *Cruz-Melgar v. Holder*, 327 F. App'x 513, 513-14 (5th Cir. 2009); *Rivera-Barrera v. Holder*, 322 F. App'x 375,

No. 11-60147

376 (5th Cir. 2009); *Cruz-Alvarez v. Holder*, 320 F. App'x 273, 273 (5th Cir. 2009); *Perez-Molina v. Gonzales*, 193 F. App'x 313, 315 (5th Cir. 2006). Pursuant to the rules of this court, these are non-precedential but persuasive authority.

In addition to the litany of cases in this circuit which side with the BIA, a multitude of other circuits have ruled similarly, and accepted the BIA arguments that its interpretations of what constitutes a "particular social group" are entitled to deference. *See Rivera-Barrientos v. Holder*, 666 F.3d 641, 648 (10th Cir. 2012); *Al-Ghorbani v. Holder*, 585 F.3d 980, 991,994 (6th Cir. 2009); *Ramos-Lopez v. Holder*, 563 F.3d 855, 858-62 (9th Cir. 2009); *Scatambuli v. Holder*, 558 F.3d 53, 59-61 (1st Cir. 2009); *Davila-Mejia v. Mukasey*, 531 F.3d 624, 628-29 (8th Cir. 2008); *Ucelo-Gomez v. Mukasey*, 509 F.3d 70, 73-74 (2d Cir. 2007)(per curiam); *Castillo-Arias v. U.S. Att'y Gen.*, 446 F.3d 1190, 1197-98 (11th Cir. 2006). In addition, the Ninth and Tenth Circuits have applied the BIA's framework to individuals from Central America resisting gang activity and have found that such individuals are not members of particular social groups. *Rivera-Barrientos*, 666 F.3d at 648; *Ramos-Lopez*, 563 F.3d at 860-62.

Only the Third and Seventh Circuit have declined to apply the BIA's framework. *See Valdiviezo-Galdamez v. Att'y Gen.*,663 F.3d 582, 603-09 (3rd Cir. 2011); *Benitez Ramos v. Holder*, 589 F.3d 426, 429-31 (7th Cir. 2009); *Gatimi v. Holder*, 578 F.3d 611, 615-17 (7th Cir. 2009). However, even the opinions in our sister circuits that reject the BIA's framework do not necessarily support the Orellana-Monsons' argument. For example, in *Benitez Ramos*, the petitioner was a former gang member from El Salvador and the Seventh Circuit determined that former gang members were members of a particular social group. *Benitez Ramos*, 589 F.3d at 429-31. In a later unpublished opinion, however, the Seventh Circuit found that a member of a family seeking police protection from Mara 18 was not a member of a particular social group, as a social group cannot be defined by its relationship to its persecutor alone or by the fact that its members

face dangers in retaliation for the actions against the persecutor. *Poroj-Mejia v. Holder*, 397 F. App'x 234, 237 (7th Cir. 2010). Moreover, in *Gatimi*, the Seventh Circuit commented, in dicta, that the proposed social group in the Ninth Circuit's *Ramos-Lopez* case— individuals resistant to gang recruitment—would fail as a particular social group under the BIA's precedents issued before the adoption of the social visibility and particularity tests, and the Seventh Circuit decided *Gatimi* based on those precedents. *Gatimi*, 578 F.3d at 616. The Seventh Circuit thus might be inclined to reject the Orellana-Monsons' proposed social group even though their opinion rejects the BIA's particularity and social visibility tests.

These cases are not binding on this court in determining the legitimacy of the BIA's interpretation. However, we stand with the majority of our sister circuits by deciding that the BIA's interpretation of the term "particular social group" is entitled *Chevron* deference.

*Chevron* requires two steps: First, we must "ask[ ] whether 'the statute is silent or ambiguous with respect to the specific issue' before it." *INS v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999) (quoting *Chevron*, 467 U.S. at 843). The second step, asking "'whether the agency's answer is based on a permissible construction of the statute,'" *id.* (quoting *Chevron*, 467 U.S. at 843), is only necessary where the statute is silent or ambiguous. Here the term "particular social group" is not defined in the INA. It does however occur in the statute defining the term "refugee", which the BIA administers. *See* 8 U.S.C. § 1101(a)(42). Since are not defined, we proceed to the second step. Under *Chevron* step two, the BIA's interpretation of a "particular social group" is binding as long as they are "a permissible construction of the statute" *Aguirre-Aguirre*, 526 U.S. at 424 (quoting *Chevron*, 467 U.S. at 843).

The BIA, applying the "particularity" and "social visibility" criteria, determined that the Orellana-Monsons' proposed groups did not constitute a

"particular social group." Jose's purported social group encompassed "Salvador[an] males between the ages of 8 and 15 who have been recruited by Mara 18 but have refused to join the gang because of their principal opposition to the gang and what they want." Andres's social group was described by petitioners as "young Salvadoran males who are siblings of a member of the aforementioned social group," or, alternatively, as "family member[s] of Jose Orellana-Monson."

We do not believe that the BIA's interpretation incorporating the "particularity" and "social visibility" test is an impermissible construction of a statute that is decidedly vague and ambiguous. Like our sister circuits, we hold that the BIA's interpretation is therefore entitled to deference since agency interpretations are given "controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Chevron*, 467 U.S. at 844.

The Petitioners contend that the social visibility and particularity test is arbitrary and an unexplained departure from BIA precedent. We disagree. Contrary to the Orellana-Monsons' contention, the BIA's current particularity and social visibility test is not a radical departure from prior interpretation, but rather a subtle shift that evolved out of the BIA's prior decisions on similar cases and is a reasoned interpretation, which is therefore entitled to deference. *See, e.g.*, *Mendez-Barrera v. Holder*, 602 F.3d 21, 26 (1st Cir. 2010); *Castillo-Arias v. U.S. Atty. Gen.*, 446 F.3d 1190, 1196 (11th Cir. 2006) (describing the evolution of the test on a case-by-case basis). By taking issue with the BIA's current test, the Orellana-Monsons ignore the fact that case-by-case adjudication is permissible and that such adjudication does not necessarily follow a straight path. The BIA may make adjustments to its definition of "particular social group" and often does so in response to the changing claims of applicants. *See Cardoza-Fonseca*, 480 U.S. at 448. Deference to published BIA decisions is warranted "as [the BIA] gives ambiguous statutory terms 'concrete meaning

No. 11-60147

through a process of case-by-case adjudication.'" *Aguirre-Aguirre*, 526 U.S. at 425 (quoting. *Cardoza-Fonseca,* 480 U.S. at 448). We therefore hold that the particularity and social visibility test established by the BIA is entitled to deference under *Chevron.*

We also affirm the BIA's decision denying particular group status to the Orellana-Monsons. The proposed groups for Jose and Andres do not meet the test established by the BIA, and we cannot say that the rejection of such a group is arbitrary and capricious. On the contrary, despite the admittedly sad story presented by the Orellana-Monsons, we find the BIA's determination to be decidedly reasonable.

First, the proposed groups lack particularity. The group proposed for Jose, men who were recruited but refused to join Mara 18, is exceedingly broad and encompasses a diverse cross section of society. "Only shared experience—that of gang recruitment—unites them. The gangs target a wide swath of society, and we have no evidence before us that they target young men with any particular political orientation, interests, lifestyle, or any other identifying factors." *Ramos-Lopez,* 563 F.3d at 862 (rejecting similar claim to Jose's for Honduran rather than El Salvadoran men). The sad part about Jose's claim is that it ultimately fails because of the pervasive nature of Mara 18 against any non-gang member in El Salvadoran society. Andres's claim that he belongs to a social group consisting of Jose's family members is similarly problematic. Here the membership in a particular family is derivative of Jose's claim which we have already determined to lack particularity. It stands to reason that if Jose's claim is too amorphous since it encompasses a wide swath of society crossing many political orientations, lifestyles, and identifying factors, then a group consisting of all family members of that already large segment, is even less particularized and therefore does not meet the particularity requirement.

We further conclude that the Orellana-Monsons' group lacks the required social visibility to qualify for asylum status and that the BIA's determination that they lacked such status was correct. There is little evidence that people who were recruited to join gangs but refused to do so would be "perceived as a group" by society. There is no indication that the gang themselves would even see such "non-recruits" as a group within Salvadoran society. More likely, the gang would perceive them "as any other person who goes against [the gang]. . . is perceived" or any other person who goes "against the gang's interest." Persons like Jose and Andres are "not in a substantially different situation from anyone who has crossed the gang, or who is perceived to be a threat to the gang's interests." *Matter of S-E-G,* 24 I&N Dec. 579, 587 (2008). We reject petitioners' contention that this conclusion is not supported by substantial evidence and as such affirm the decision of the BIA that the Orellena-Monsons' proposed group lacked social visibility. As such, their group fails to meet the requirements of "particular social group" under the INA as interpreted by the BIA and Jose and Andres therefore cannot have a well founded fear of persecution as a result of membership in such group.

It follows then that Jose and Andres are also not eligible for withholding of removal since that requires a showing that it is more likely than not that the alien's life or freedom would be threatened by persecution on one of the five grounds for asylum including membership in a particular social group. *Efe*, 293 F.3d at 906. Since they are not members of a particular social group, they cannot press for withholding of removal.

## CONCLUSION

Because Jose and Andres Orellana-Monson have not demonstrated that they are eligible for status under the "particular social group" prong of the INA's eligibility criteria for asylum, we deny the petition for review of the BIA's decision denying asylum and withholding of removal.  AFFIRMED