**Adiam HEBTEMARIAM, Petitioner,**

v.

**Eric H. HOLDER, Jr., U.S. Attorney
General, Respondent.**

No. 13–60275.

United States Court of Appeals,
Fifth Circuit.

June 19, 2014.

Michael Andegeorgis, Washington, DC,
for Petitioner.

Annette Marie Wietecha, Trial Attorney,
Tangerlia Cox, U.S. Department Of Jus-
tice Office Of Immigration Litigation,
Washington, DC, for Respondent.

Before DAVIS, ELROD, and COSTA,
Circuit Judges.

PER CURIAM: *

Adiam Hebtemariam, a citizen of Eritrea, filed an application for asylum, withholding of removal, and withholding of removal under the Convention Against Torture ("CAT"). The Immigration Judge denied the application. The Board of Immigration Appeals also denied relief, agreeing with the Immigration Judge's adverse credibility determination as to Hebtemariam and concluding that remand based on a new assertion was inappropriate because that ground was previously available and discoverable. Hebtemariam now seeks review of the Board of Immigration Appeals' decision. Because we are bound by our precedent and statute to defer to the agency's credibility determinations in this case and because we see no abuse of discretion in the decision to deny remand, we deny Hebtemariam's petition.

## I.

In her original application for asylum, Hebtemariam stated that she feared returning to Eritrea. According to her application, Hebtemariam feared that she would be imprisoned, beaten, raped, or killed by the Eritrean government and military because she left involuntary military service without permission. Hebtemariam denied, however, that she previously had been harmed or mistreated.

The Immigration Judge held a merits hearing, where the following facts unfolded. In July 2008, Hebtemariam was sent to the Sawa military facility to complete the twelfth grade and three months of mandatory military training, as required by Eritrean law. Hebtemariam explained that she was in the "military service" in April 2009 when she fell ill and was sent home; she received a "handwritten letter" from the military authorities to approve her leave. Hebtemariam did not recall, however, telling the asylum officer that she went home because she failed an exam. Hebtemariam returned to Sawa in November 2009. At one point during the hearing, Hebtemariam testified that she had finished the twelfth grade; at another, she testified that she had not. It is also unclear whether Hebtemariam · returned home a second time. Once back at the Sawa facility, though, Hebtemariam landed a job in the kitchen. Hebtemariam was not in the military, according to her testimony, but merely stationed to work at the military facility. During this stretch of time, Hebtemariam alleges that she was constantly sexually harassed and was raped by her superior, a man named Tsigiay. Hebtemariam knew that Tsigiay was in the military but did not know what rank he held. Hebtemariam stated that Tsigiay always "hit" her and that the "punishment" for not obeying him was "severe." Hebtemariam testified, however, to only two concrete incidents involving Tsigiay— one in which Tsigiay grabbed her arm and she ran away, and the other involving the rape. Later in her testimony, Hebtemariam returned to the first incident and added that, after she ran away, Tsigiay punished her by forcing her to stand outside in the heat all day. Hebtemariam also later stated that Tsigiay never hit her.

Hebtemariam explained that "they"— i.e., the military authorities—"hit" her, that the conditions at Sawa were bad, and that she therefore wished to leave the country. Hebtemariam escaped unnoticed in November 2010 and traveled to Sudan. Hebtemariam's uncle arranged for a smug-

---

* Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

gler to transport her to South America, and she then made her way through Central America to the United States border, where she requested asylum. Hebtemariam recalled having paid $2,400 for the leg of her trip from Panama to Mexico. Previously, however, she stated that that portion of the journey had cost her $200. Hebtemariam asserted that she would be imprisoned or killed if she was forced to return to Eritrea because she had deserted the "national service" and departed the country without permission.

The Immigration Judge denied her application for asylum, withholding of removal, and withholding of removal under the CAT, finding certain aspects of Hebtemariam's story implausible. The Board of Immigration Appeals dismissed her appeal, explaining that the Immigration Judge's adverse credibility determination was supported by Hebtemariam's lack of responsiveness as well as the inconsistencies between Hebtemariam's asylum application, interview with an asylum officer, and testimony before the Immigration Judge. Specifically, the Board of Immigration Appeals concluded that there were inconsistencies regarding the circumstances of the rape, the details of her punishment by her military superior for rebuffing his advances, and her escape from Eritrea and subsequent travel to the United States. The Board of Immigration Appeals observed that Hebtemariam had failed to come forth with any corroborating evidence of past persecution. Moreover, the Board of Immigration Appeals explained that Hebtemariam's testimony regarding her asserted conscription in Eritrea was inconsistent with country condition evidence. Thus, even though the conditions in Eritrea indicated that deserters are persecuted, in light of the adverse credibility determination, the Board of Immigration Appeals concluded that Hebtemariam could not meet her burden to establish that she would be identified and punished as a deserter. In conjunction with her appeal to the Board of Immigration Appeals, Hebtemariam filed a motion to remand based on new evidence that she had suffered female genital mutilation. The Board of Immigration Appeals denied the motion because Hebtemariam failed to establish that the evidence was material and could not have been discovered or presented at her original hearing.

## II.

### A.

Under 8 U.S.C. § 1158(b)(1)(A), the Attorney General may grant "asylum" to an alien who qualifies as a "refugee" under 8 U.S.C. § 1101(a)(42)(A). A refugee is a person who (1) is unable or unwilling to return to his or her home country "because of persecution or a well-founded fear of persecution" and (2) has demonstrated that "race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for the persecution." *Orellana–Monson v. Holder*, 685 F.3d 511, 518 (5th Cir.2012) (emphasis and internal quotation marks omitted); *see* 8 C.F.R. § 208.13(b) ("The applicant may qualify as a refugee either because he or she has suffered past persecution or because he or she has a well-founded fear of future persecution."). To establish a "well-founded fear," the person must demonstrate a subjective fear, and that fear must be objectively reasonable. *Sharma v. Holder*, 729 F.3d 407, 413 (5th Cir.2013). The person must support the claim with "specific, detailed facts showing a good reason to fear that he or she will be singled out for persecution." *Orellana–Monson*, 685 F.3d at 518 (quoting *Faddoul v. INS*, 37 F.3d 185, 188 (5th Cir.1994)). The asylum standard is more lenient than the standard for

withholding of removal; therefore, a petitioner's failure to establish asylum eligibility forecloses a claim for withholding of removal. *See Orellana–Monson,* 685 F.3d at 518 ("The standard for obtaining withholding of removal is even higher than the standard for asylum, requiring a showing that it is more likely than not that the alien's life or freedom would be threatened by persecution on one of those grounds."). To obtain relief under CAT, "an applicant must show that it is more likely than not that he would be tortured if returned to his home country." *Zhang v. Gonzales,* 432 F.3d 339, 344–45 (5th Cir.2005) (internal quotation marks omitted); *see* 8 C.F.R. § 208.16(c)(2).

We review the Board of Immigration Appeals' findings of fact for substantial evidence. *Wang v. Holder,* 569 F.3d 531, 536 (5th Cir.2009); *see* 8 U.S.C. § 1252(b)(4)(B) ("findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary"). The findings supporting the conclusion that an alien is not eligible for asylum, withholding of removal, or relief under the CAT are factual. *Zhang,* 432 F.3d at 344. Credibility determinations fall within the purview of the factfinder. *Id.; see also* § 1158(b)(1)(B)(iii) ("Considering the totality of the circumstances, and all relevant factors, a trier of fact may base a credibility determination on [1] the demeanor, candor, or responsiveness of the applicant or witness, [2] the inherent plausibility of the applicant's or witness's account, [3] the consistency between the applicant's or witness's written and oral statements ..., [4] the internal consistency of each such statement, [5] the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and [6] any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim...."). We may not reverse factual findings unless "the evidence was so compelling that no reasonable factfinder could conclude against it." *Wang,* 569 F.3d at 537.

■ We conclude that the record does not require reversal here. Put another way, under our binding precedent, the Board of Immigration Appeals' affirmance of the Immigration Judge's adverse credibility determination is sufficiently supported by the record. Hebtemariam's lack of responsiveness before the Immigration Judge is reflected in the hearing transcript. The Immigration Judge repeatedly asked Hebtemariam to clarify her answers, provide more specific details, and explain discrepancies; Hebtemariam repeatedly responded with details that painted a vague and fluid story. Hebtemariam omitted any details regarding her rape or sexual harassment in her written application. In fact, Hebtemariam checked the box next to "No" in answering the question, "Have you ... ever experienced harm or mistreatment or threats in the past by anyone?" This answer also conflicted with her later statement that the military authorities and Tsigiay "hit" her.[1] The Board of Immigration Appeals specifically discredited Hebtemariam's claims that she was conscripted into national service and that she escaped involuntary service, pointing to the lack of corroborating evidence as well as the inconsistencies in her explanation of her experiences at the Sawa facility. For example, Hebtemariam's account of being in and out of the Sawa

---

1. Hebtemariam reversed course on this statement as well, stating before the Immigration Judge that Tsigiay never hit her.

facility appeared to evolve between the time she interviewed with the asylum officer and the time she testified before the Immigration Judge. Any other inconsistencies in her statements were appropriate grounds for evaluating her credibility, regardless of whether the inconsistencies went "to the heart" of her claim. *See* § 1158(b)(1)(B)(iii). Nothing in the record is "so compelling" so as to convince us that "no reasonable factfinder" could have disbelieved Hebtemariam's testimony. We emphasize that, under the law and under these circumstances, we are required to accept to the agency's credibility determination, even if, upon *de novo* review, we might not agree with the agency. Moreover, Hebtemariam has not identified any evidence showing that Eritrean authorities are already aware, or could become aware, that she exited Eritrea illegally—i.e., in a manner that would trigger persecution at the hands of the Eritrean authorities. Because the Board of Immigration Appeals' factual determinations withstand review, we conclude that substantial evidence supports the decision to deny Hebtemariam's asylum and withholding of removal claims. *See Orellana–Monson,* 685 F.3d at 518.

Substantial evidence also supports the decision to deny Hebtemariam's CAT claim on account of her rape and desertion. The Board of Immigration Appeals rejected Hebtemariam's claims that she had been tortured in the past or would be tortured in the future because it did not credit Hebtemariam's testimony regarding the circumstances of her rape and desertion from national service. As explained in more detail above, these credibility determinations withstand review. The country condition evidence indicates that the Eritrean authorities have killed deserters, but Hebtemariam has not identified any evidence showing that the Eritrean authorities are already aware, or could become aware, that she exited Eritrea illegally.

Therefore, we cannot conclude that the country condition evidence alone compels the conclusion that it is more likely than not that Hebtemariam would be tortured. *See Zhang,* 432 F.3d at 344–45.

### B.

■ We consider motions to remand for the consideration of new evidence to be the same, in substance, as motions to reopen removal proceedings. *Ramchandani v. Gonzales,* 434 F.3d 337, 340–41 n. 6 (5th Cir.2005). We review the Board of Immigration Appeals' denial of such a motion for abuse of discretion. *Zhao v. Gonzales,* 404 F.3d 295, 303 (5th Cir.2005). "A motion to reopen proceedings shall not be granted unless it appears to the [Board of Immigration Appeals] that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing...." 8 C.F.R. § 1003.2(c)(1); *see also Fishaye v. Holder,* 559 Fed.Appx. 296, 298 (5th Cir. 2014) (same). The Board of Immigration Appeals reasoned that Hebtemariam was not entitled to remand of the removal proceeding for consideration of evidence of her genital mutilation because this evidence was previously available and discoverable. We conclude that the Board of Immigration Appeals did not abuse its discretion by refusing to remand her removal proceeding, even in light of her *pro se,* incustody status and asserted ignorance of immigration law when she filed her application.

Hebtemariam's petition for review is DENIED.