# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 5, 2025

Lyle W. Cayce
Clerk

———————

No. 24-60127

———————

Rajeev Gupta,

*Petitioner*,

*versus*

Pamela Bondi, *U.S. Attorney General*,

*Respondent*.

———————————————————

Petition for Review of an Order of the
Board of Immigration Appeals
Agency No. A205 113 377

———————————————————

Before Richman, Willett, and Douglas, *Circuit Judges*.
Per Curiam:*

In this immigration case, Rajeev Gupta challenges a decision from the Board of Immigration Appeals. He claims that the Board erred in concluding that he was removable and in denying his request for adjustment of status and voluntary departure. We AFFIRM the Board's decision.

———————————————

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-60127

## I

Rajeev Gupta is a native and citizen of India. He first entered the United States in 2003 on an F-1 student visa and has remained here on subsequent F-1, H-1B, and B-2 visas. Most recently, he obtained an extension for his B-2 non-immigrant visa with authorization to stay in the United States until August 25, 2020. Gupta did not depart the United States by August 25, 2020, nor did he seek to renew or extend his visa.

In mid-December 2020—almost four months after his visa expired—Gupta was arrested for aggravated assault with a deadly weapon. After over two years of pre-trial incarceration, on January 23, 2023, Gupta pleaded guilty to a misdemeanor offense of unlawful restraint; his aggravated assault charge was dismissed the same day. He was sentenced to 11 months' imprisonment on the unlawful restraint conviction.

Gupta was released directly into the custody of the United States Immigration and Customs Enforcement. He was then issued a notice to appear before an immigration judge on charges that he was removable under 8 U.S.C. § 1227(a)(1)(B) for remaining in the United States without authorization.

Gupta appeared *pro se* before the immigration judge and admitted that he was a citizen of India, that he was not a citizen of the United States, that his last visa extension expired on August 25, 2020, and that he had no documents or evidence from the government permitting him to stay past this expiration date. Based on these admissions, the immigration judge found that the government had established the charge of removal by clear and convincing evidence. Gupta asked the immigration judge to reconsider that finding at two subsequent hearings but was rebuffed. Gupta also requested employment-based adjustment of status and, alternatively, post-conclusion

voluntary departure, but the immigration judge determined that he was not eligible for either.

Gupta appealed to the Board of Immigration Appeals, contesting the immigration judge's finding of removability, its denial of his request for adjustment of status, and its denial of his request for voluntary departure. The Board affirmed the immigration judge. Gupta now seeks our review on these same three issues.

## II

We review the Board's decision and consider the immigration judge's decision only to the extent it influenced the Board. *Orellana-Monson v. Holder*, 685 F.3d 511, 517 (5th Cir. 2012). The Board's factual findings are reviewed for substantial evidence, and its legal conclusions are reviewed de novo. *Id.* We will only reverse the Board's factual findings if the evidence compels a contrary conclusion. *Chen v. Gonzales*, 470 F.3d 1131, 1134 (5th Cir. 2006).

## III

Gupta first contests the Board's finding that he was removable. He does not dispute that his visa expired on August 25, 2020, nor that he stayed in the United States beyond that date; rather, he argues that his stay was justified due to no fault of his own. He claims that he was initially unable to depart because of flight cancellations during the COVID-19 pandemic. And that then, after his arrest warrant was issued in early November 2020, his stay was constitutionally protected so that he could defend against the charges.

To establish an overstay, the government need only show that a non-immigrant was admitted for a temporary period and failed to depart after that period elapsed. *Ho Chong Tsao v. INS*, 538 F.2d 667, 668 (5th Cir. 1976). Generally speaking, "an inquiry into whether or not an overstay was justified

is not germane to the question of an alien's deportability." *Matter of Teberen*, 15 I. & N. Dec. 689, 690 (BIA 1976) (citations omitted). Gupta cites the Board's decision in *Matter of C---- C----* (*C- C-*), where it recognized an exception to this general rule for an alien who was unable to depart because he was in custody awaiting trial at the expiration of his admission period. 3 I. & N. Dec. 221, 221–22 (BIA 1948). The alien was subsequently acquitted and permitted to depart voluntarily. *Id.* Gupta contends that *C- C-*, and the Board's subsequent interpretations of that case, reflect a bright-line exception for aliens who are unable to depart due to no fault of their own. But there is no precedent suggesting, as Gupta argues, that this exception extends to every situation in which an alien claims his failure to depart was beyond his control.

Yet even assuming Gupta is correct that visa overstays are justified whenever a non-immigrant is unable to depart due to no fault of his own, that does not apply here. Despite recognizing that Gupta's departing flights were repeatedly cancelled, the Board upheld the immigration judge's finding that this did not cause Gupta to overstay because Gupta "made no attempt to file an extension of his stay during that time—despite having the opportunity to do so." The Board also found that Gupta's incarceration does not excuse his overstay because he could have sought an extension during the three months between when his visa expired and when he was charged; plus, an additional month after he was charged but before he was incarcerated. Moreover, unlike the alien in *C- C-*, Gupta was convicted, not acquitted. *See* 3 I. & N. Dec. at 221–22 (recognizing that the alien's acquittal showed that his failure to depart was through no fault of his own and distinguishing cases where an alien's criminal act caused his incarceration). There is nothing in the record compelling us to overturn the Board's finding that Gupta shared fault for his failure to depart by his visa's expiration date.

No. 24-60127

Gupta also argues that the Board failed to recognize procedural errors committed by the immigration judge that violated Gupta's due process rights. Specifically, he claims the immigration judge failed to: (1) ask him whether he concedes removability; (2) determine unresolved factual issues; and (3) hold a hearing to determine the facts.

"To prevail on a due process claim, an alien must make an initial showing of substantial prejudice by making a prima facie showing that the alleged violation affected the outcome of the proceeding." *Arteaga-Ramirez v. Barr*, 954 F.3d 812, 813 (5th Cir. 2020) (internal quotation marks and citation omitted). Here, the Board rejected Gupta's due process arguments because, contrary to Gupta's claims, the immigration judge acknowledged that Gupta objected to removal and gave him an opportunity to present his arguments both orally and in writing. The immigration judge then found, notwithstanding Gupta's arguments, that the government had met its burden of establishing removability. The Board accepted these findings and confirmed that the government "satisfied its burden to establish [that Gupta] is removable." Gupta may disagree with those findings and conclusions, but that doesn't show that he was denied due process. Moreover, Gupta has not made any prima facie showing that the outcome of his proceeding would have been different had the immigration judge engaged in additional fact findings. *See id.*[1]

Next, Gupta challenges the Board's decision denying him adjustment of status under 8 U.S.C. § 1255. An adjustment of status is not available to

---

[1] Gupta also claims that that the government violated his constitutional rights by issuing an immigration detainer without probable cause. He says that the government lacked probable cause because he was not removable and repeats his arguments against removability. Because we hold that Gupta was removable, this lack-of-probable-cause argument also fails.

someone "who is in unlawful immigration status on the date of filing the application for adjustment of status or who has failed (other than through no fault of his own or for technical reasons) to maintain continuously a lawful status since entry into the United States." *Dhuka v. Holder*, 716 F.3d 149, 153 (5th Cir. 2013) (quoting 8 U.S.C. § 1255(c)(2)). Notwithstanding this continuous-lawful-presence requirement, "a person lawfully admitted who is eligible to receive certain employment-related visas may adjust status so long as the alien has not for an aggregate of more than 180 days failed to be in a lawful status." *Id.* at 158 (citing 8 U.S.C. § 1255(k)(2)(A)).

Gupta argues that although he failed to maintain continuous lawful status since entering the United States, this failure was "through no fault of his own or for technical reasons." He claims that his flight cancellation and incarceration forced him into unlawful status. He also argues that even if we think his failure to maintain lawful status during the period between his visa expiration and incarceration was *not* due to no fault of his own, he should still be eligible for an adjustment of status. He explains that under § 1255(k)(2), he receives an aggregate of 180 days in which to be in unlawful status, and that any time during which his failure to depart was not his fault should be excluded from that count. Thus, according to Gupta, his incarceration period should be excluded from the 180-day count. And because the period between his visa expiring and his incarceration was only 113 days, he never reached an aggregate of 180 days in unlawful status.

Before addressing Gupta's arguments, we must be sure of our jurisdiction. The government correctly notes that we lack jurisdiction to review any factual findings concerning adjustment of status. *See Patel v. Garland*, 596 U.S. 328, 347 (2022); 8 U.S.C. § 1252(a)(2)(B)(i). We do, however, have jurisdiction to review mixed questions of law and fact, including "the application of [a legal] standard to a given set of facts." *Wilkinson v. Garland*, 601 U.S. 209, 217, 225 (2024) (citing U.S.C.

§ 1252(a)(2)(D)). Thus, while we cannot examine any of the Board's factual findings, we do have jurisdiction to review whether the Board used the correct legal standards and whether it properly applied those standards to Gupta's case.

That said, we see no error in the Board's decision. To begin, Gupta was at fault for failing to maintain lawful status prior to his incarceration. The statutory terms "no fault" and "technical reasons" are limited to four factual scenarios by regulations. *See* 8 C.F.R. § 1245.1(d)(2). Gupta asks us to expand that "rigid" definition. But even if we did so, Gupta's argument fails. As with removability, here, again, the Board found that Gupta "had the opportunity to request an extension of stay or change in status . . . after he was unable to depart." That finding of fact is unreviewable. So assuming without deciding that Gupta is right and the statutory terms "no fault" and "technical reasons" are broader than the current regulations permit, Gupta was nevertheless at fault for his failure to maintain lawful immigration status under § 1255(c)(2). We therefore uphold the Board's conclusion that Gupta's "failure to maintain lawful status is attributable to his own inaction versus through no fault of his own or for technical reasons."

Gupta's alternative argument is that even if the 113 days between when his visa expired and his incarceration count toward his 180-day grace period, the 180-day clock should stop while he was incarcerated. The Board disagreed, explaining that the plain text of § 1255(k)(2) "sets a clear cutoff date for the grace period and creates no exception." We need not resolve this statutory-interpretation dispute as to whether the statute permits tolling of the 180-day clock. Even assuming the 180-day count does not run when an alien is not at fault for his unlawful status, here, Gupta *was* at fault for failing to be in lawful status during his incarceration.

No. 24-60127

While precedent supports the idea that an alien is not at fault for his unlawful presence due to incarceration when he is later acquitted of the crime, *see C- C-*, 3 I.&N. Dec. at 221–22, we are unaware of any authority suggesting that this applies if the alien is convicted. After all, if an alien's own criminal conduct caused his overstay, it would be strange to call him faultless. For example, could an alien lock himself in a room and then claim that his 180-day clock tolls because he is physically unable to depart or seek a visa extension? Certainly not. So too here. We agree with the Board's reasoning that because Gupta was convicted and sentenced to 11 months' imprisonment, he cannot argue that his incarceration period prevented him from maintaining a continuous lawful status due to no fault of his own. We affirm the Board's finding that § 1255(k)(2)'s 180-day clock continued to run during Gupta's incarceration.[2]

Finally, Gupta asks that we reverse the Board's decision denying him voluntary departure. Because we affirm the Board's decision on removability and adjustment of status, and because Gupta has already been removed from the United States, this voluntary departure challenge is moot. *See Mosquera v. Gonzales*, 213 F. App'x 288, 289 (5th Cir. 2007); *see generally Mendoza-Flores v. Rosen*, 983 F.3d 845, 847 (5th Cir. 2020) (explaining how immigration challenges are moot "if it is impossible for this court to grant . . . any effectual relief").

*       *       *

For these reasons, we AFFIRM the Board's decision.

---

[2] Gupta contends that the Board misunderstood his argument as solely requesting equitable tolling. But the Board expressly noted that it was denying his request "to equitably toll the 180-day grace period . . . *or* find [Gupta's] confinement in state custody does not count towards the accrual of his time out of status." (emphasis added).