# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 4, 2025

Lyle W. Cayce
Clerk

_____

No. 25-40121

_____

Elias Gonzalez, Jr.; Martha Carolina Chavez Aguero,

*Plaintiffs—Appellants*,

*versus*

Kristi Noem, *Secretary, U.S. Department of Homeland Security*; Pamela Bondi, *U.S. Attorney General*; Norma A. Limon, *U. S. Citizenship and Immigration Services District Director*; United States of America; Angelica Alfonso-Royals, *Acting Director of U.S. Citizenship and Immigration Services*; United States Attorney, Houston Jennifer B. Lowery,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:21-CV-417

_____

Before Smith, Stewart, and Ramirez, *Circuit Judges*.

Per Curiam:[*]

The genesis of this appeal is the denial, by the United States Citizenship and Immigration Service ("USCIS"), of a Form I-130 Petition submitted by Elias Gonzalez, Jr., attempting to alter the immigration status

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

of his wife, Martha Chavez Aguero.  The petition asked USCIS to recognize Chavez Aguero as the beneficiary of immigration benefits based on their marriage. USCIS sent Gonzalez a Notice of Intent to Deny ("NOID") the petition, stating that 8 U.S.C. § 1154(c) prevented USCIS from approving the petition because they believed Chavez Aguero had entered into a marriage with Joel Ribera for the purpose of avoiding immigration laws.

After Gonzalez failed to provide pertinent rebuttal evidence, USCIS issued a decision that echoed the NOID, and Gonzalez sued to review USCIS's determination under the Administrative Procedure Act ("APA"). The district court granted summary judgment, finding that Gonzalez's challenge failed as a matter of law. *Gonzalez v. Mayorkas*, 762 F. Supp. 3d 570, 587 (S.D. Tex. 2025).

Gonzalez asks for reversal on three distinct grounds. First, he claims that USCIS's denial of the petition was arbitrary and capricious because it failed to conduct an independent analysis of the marriage-fraud claim as required by *Matter of Tawfik*, 20 I&N Dec. 166 (BIA 1990).  Second, Gonzalez claims that USCIS's decision was unsupported by substantial evidence. Lastly, Gonzalez posits that USCIS failed to comply with 8 U.S.C. § 103.2(b)(16) by failing to disclose adverse documentary evidence that USCIS relied on.

I.

In June 2006, Chavez Aguero and Ribera filed a Declaration of Informal Marriage, attesting under penalty of perjury that they married and began cohabitating in May 2004.  Ribera then filed a Form I-130 Petition to extend benefits to Chavez Aguero as his wife, stating that Chavez Aguero had been married to Anibal Ruiz until April 2002. Ribera submitted an unauthenticated Mexican divorce decree in support of that history and failed to list any of Chavez Aguero's children.

No. 25-40121

USCIS approved the petition. Two years later, Chavez Aguero filed a Form I-751 Petition to Remove Conditions on Residence. That form contradicted previous filings by revealing that Chavez Aguero had children born in November 2004 and February 2006. Nevertheless, USCIS approved the Form I-751 and granted Chavez Aguero legal permanent resident status.

In 2014, USCIS obtained a certified copy of the divorce decree for Chavez Aguero's first divorce. The decree stated that she was divorced from her first husband in April 2005, contradicting the unauthenticated copy originally provided to USCIS and indicating that she would have still been married to her first husband when she claimed to be married to Ribera.

In 2017, USCIS interviewed Chavez Aguero. She was unable to answer questions about her marriage with Ribera and did not know his whereabouts, even though she was still married to him. USCIS determined at that time that Chavez Aguero had been living with Gonzalez in a common law marriage for three to four years. USCIS determined the marriage with Ribera was entered into to evade immigration laws, and in 2019 USCIS began removal proceedings on Chavez Aguero. This sequence of events is what ultimately led USCIS to reject Chavez Aguero's Form I-130 Petition.

II.

Each of Gonzalez's issues fails. The district court correctly found that USCIS complied with the requirements of *Tawfik* when it stated, while citing *Tawfik*, that it based its decision on "a thorough review of your petition, the testimony provided during your interview, and the record of evidence." *Gonzalez*, 762 F. Supp. 3d at 585. Likewise, the court correctly found that the conflicting divorce decrees and Chavez Aguero's 2017 interview provided substantial evidence for USCIS's determination. Finally, the court correctly found that Gonzalez had an opportunity to examine and rebut adverse evidence when the NOID identified relevant evidence and provided Gon-

zalez with an opportunity to rebut it.

## A.

Under the arbitrary and capricious standard, "the agency . . . must examine the relevant data and articulate a satisfactory explanation for its action." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 30 (1983). "In reviewing that explanation, a court must consider whether the decision was based on a consideration of the relevant factors and whether there was a clear error of judgment." *Id.* at 30–31. Judicial review under the arbitrary and capricious standard is deferential, and "a court may not substitute its own policy judgment for that of the agency. *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021).

In *Tawfik*, the district director, in revoking a beneficiary's visa petition, gave conclusive weight to a previous adjudication. The district director noted "that the evidence showing that the beneficiary had entered into a marriage for the purpose of evading the immigration laws had been 'sufficient to warrant the denial of the petition' filed by the beneficiary's former United States citizen spouse." *Tawfik*, 20 I&N Dec. at 168.

The Board of Immigration Appeals ("BIA") sustained the appeal and reinstated the petition. The BIA stated that "[o]rdinarily, the district director should not give conclusive effect to determinations made in a prior proceeding, but, rather, should reach his own independent conclusion based on the evidence before him." *Id.* The BIA qualified that statement, noting that "the district director may rely on any relevant evidence, including evidence having its origin in prior Service proceedings involving the beneficiary, or in court proceedings involving the prior marriage." *Id.* The BIA also limited the rule by reasoning that "in a case where the beneficiary has previously been found deportable based on a determination, supported by clear, unequivocal, and convincing evidence, that that beneficiary became a party to a

fraudulent marriage for the purpose of entering the United States as an immigrant," it is permissible for the district director to rely on that finding of deportability in determining that Section 204(c) precludes approval of the visa petition. *Id.* The BIA concluded that the determination on which the district director had relied made no affirmative finding that the marriage was entered into to evade immigration laws and that there was no evidence in the alien's file to support the charge. *Id.* at 168–69. Consequently, the visa petition was reinstated. *Id.* at 170.

In the instant case, there is minimal evidence that USCIS attempted to give conclusive effect to a prior determination. Instead, the NOID said that the decision was arrived at after "a thorough review of your petition, the testimony provided during your interview, and the record evidence." *Gonzalez*, 762 F. Supp. 3d at 585. The NOID also stated the relevant legal standards, including *Tawfik*. *Id.* Though it is possible to read NOID's statement that approval is prohibited because "the beneficiary . . . was entered into removal proceedings based on providing a fraudulent divorce decree . . . and entering into a fraudulent marriage," *id.* at 575, as giving conclusive effect to the removal proceeding without conducting an independent analysis, the context, including the NOID's explicit statement regarding independent consideration of the relevant evidence and their recitation of relevant law, supports a reading that comports with *Tawfik*.

Gonzalez also claims that there is no indication that USCIS weighed contradictory or exculpatory evidence. That is not so. The final decision provided a list of the evidence Gonzalez included in his rebuttal and stated that Gonzalez had "failed to submit evidence to show that the beneficiary's prior marriages were not entered into for the primary purpose of evading immigration law." *Gonzalez*, 762 F. Supp. 3d at 576 (citation modified). Regardless of any dissatisfaction Gonzalez may have, the aforementioned statement means that USCIS considered the material and found it irrelevant, a conclu-

No. 25-40121

sion that is squarely in line with the statutory text.[1]

The district court correctly decided that USCIS's ruling was not arbitrary and capricious. The record indicates USCIS undertook an independent examination of the relevant evidence and explained its underlying action. Only an attenuated reading of the NOID can yield the conclusion that USCIS gave conclusive weight to a previous determination.

B.

Gonzalez claims that USCIS's decision is not supported by substantial evidence. The APA requires the reviewing court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . unsupported by substantial evidence." 5 U.S.C. § 706(2)(E). "We review the BIA's findings of facts under the substantial evidence standard, which requires that the decision of the BIA be based on the evidence presented and that the decision be substantially reasonable." *Orellana-Monson v. Holder*, 685 F.3d 511, 517–18 (5th Cir. 2012). "[R]eversal is improper unless the court decides 'not only that the evidence supports a contrary conclusion, but also that the evidence *compels* it.'" *Id.* at 518 (quoting *Chen v. Gonzales,* 470 F.3d 1131, 1134 (5th Cir. 2006)). "Substantial evidence is merely enough that a reasonable mind could arrive at the same decision; though the evidence "'must be more than a scintilla[,] it need not be a preponderance.'" *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021) (quoting *Taylor v. Astrue*, 706 F.3d 600, 602

---

[1] *See Iyawe v. Garland*, 28 F.4th 875, 879 (8th Cir. 2022) ("[8 U.S.C. § 1154(c)] is mandatory and bars approval of an I-130 petition if the noncitizen previously sought immigration benefits through a fraudulent marriage or attempted or conspired to do so, even if the current marriage is bona fide or if the noncitizen was never prosecuted for the past conduct."); *see also Matter of Kahy*, 19 I&N Dec. 803, 805 n.2 (BIA 1988) ("Even if his current marriage is unquestionably bona fide, however, the visa petition cannot be approved if the beneficiary sought to be accorded nonquota status based on a prior fraudulent marriage.").

(5th Cir. 2012)).

Gonzalez claims that substantial evidence did not support USCIS's determination because the discrepancy between divorce decrees does not establish knowing misrepresentation, Chavez Aguero's memory lapses do not constitute legal proof, and USCIS never made a reasoned connection between the aforementioned facts and a finding of fraud. Gonzalez cites no relevant authority for any of these propositions. He relies on a district court case, *Anyaso v. Mayorkas*, 716 F. Supp. 3d 642 (N.D. Ill. 2024), for the proposition that this factual scenario cannot support a finding of fraud.

*Anyaso* is inapposite. There, the evidence relied on by USCIS was abnormally weak. For example, USCIS relied on the husband's and wife's having given different accounts of where they celebrated an anniversary. *Id.* at 654. The court found that this amounted to "'nitpicking about minor discrepancies as to dates,' rather than focusing on 'matters[ ] which had a substantial bearing on whether their marriage was or was not a sham.'" *Id.* (quoting *Omowole v. Garland*, 6 F.4th 734, 742 (7th Cir. 2021)). In comparison, the discrepancies present on the divorce decree made the difference between Chavez Aguero's being married at the time of her purported marriage to Ribera and her being lawfully wed.

Contrary to Gonzalez's assertion, there's ample evidence to support the finding that Chavez Aguero entered into her previous marriage to evade immigration laws. *Tawfik* explicitly states that neither a conviction nor a prosecution is necessary to justify a denial under § 1154(c); instead "the evidence of such attempt or conspiracy must be documented in the alien's file and must be substantial and probative." *Tawfik*, 20 I&N Dec. at 167. Furthermore, direct evidence of fraud is unnecessary for establishing a violation

of § 1154(c).[2]

The record contains evidence that Chavez Aguero and Ribera submitted a fraudulent divorce decree, meaning that she was still married to Ruiz when Ribera filed the Form I-130, claiming Chavez Aguero was his wife. In addition to that issue, there were inconsistencies across applications regarding Chavez Aguero's children from her marriage with Ruiz, and, as previously stated, Chavez Aguero was unable to provide any details about Ribera's whereabouts, despite still being married to him at the time of the interview. The submission of a fraudulent divorce decree, combined with the inability to recall the whereabouts of Ribera, is more than sufficient to support an inference that Chavez Aguero's marriage to Ribera was entered into to avoid immigration laws, especially under the deferential substantial evidence standard.

## C.

Gonzalez avers that USCIS violated 8 C.F.R. § 103.2(b)(16) by not attaching the 2005 divorce decree or detailed information concerning the 2017 review. Gonzalez alleges that they could not meaningfully respond to the alleged fraud because they were not told the precise documents or statements that were being used against them. Gonzalez cites no relevant authority for the proposition that to comply with § 103.2(b)(16), USCIS is required to describe evidence with a high degree of specificity. The first case cited, *Singh v. Bardini*, does not even apply § 103.2(b)(16), though it uses it as an analogy. No. C-09-3382 EMC, 2010 WL 2292320, at *5 (N.D. Cal. June 7,

---

[2] *Matter of P. Singh,* 27 I &N Dec. 598, 608 (BIA 2019) ("That is, in certain cases, the quality and quantity of the circumstantial evidence may be sufficient to create such a strong inference of fraud that it rises to the level of substantial and probative."); *see also Omokoro v. Hamilton*, 688 F. App'x 263, 264 (5th Cir. 2017) (per curiam) (using only circumstantial evidence in finding that a previous marriage was a sham).

2010).  The other case, *Smith v. Garland*, required only a summary of the relevant evidence and found that notice is sufficient where it provides enough information to permit a petitioner to rebut the evidence.  103 F.4th 1244, 1255 (7th Cir. 2024), *cert. denied*, 145 S. Ct. 1059 (2025).

> In this case, USCIS provided the following description:
>
> On October 30, 2019, the beneficiary was entered into removal proceedings based on providing a fraudulent divorce decree between herself and ex-husband, Anibal Ruiz Martinez and entering into a fraudulent marriage with her ex-husband, Joel E. Ribera to gain legal permanent resident status in violation of the immigration laws of the United States.

*Gonzalez*, 762 F. Supp. 3d at 575 (citation modified).  That description highlighted the fraudulent divorce decree and the removal proceeding, whose record Gonzalez would have had access to.  In response, Gonzalez's attorney did not substantively answer any of those charges; instead, he said he could "not find any evidence that the divorce was fraudulent," confusing the issue of a fraudulent divorce with a fraudulent divorce decree. He also asserted that any concerns regarding Chavez Aguero's previous marriages are irrelevant, considering the *bona fide* nature of his marriage with Chavez Aguero.  Ultimately, the description provided by USCIS, while brief, provides all the information necessary for Gonzalez or his counsel to rebut the charge.

The summary judgment is AFFIRMED.