[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPT 22, 2008
THOMAS K. KAHN
CLERK

No. 07-13999

D. C. Docket No. A97-741-544

CESAR MAURICIO GOMEZ-BENITEZ,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

Petition for Review of a Decision of the
Board of Immigration Appeals

**(September 22, 2008)**

Before DUBINA, HULL and FAY, Circuit Judges.

PER CURIAM:

Petitioner Cesar Mauricio Gomez-Benitez ("Gomez") seeks review of the Board of Immigration Appeals' ("BIA") final order affirming the Immigration Judge's ("IJ") denial of Gomez's application for asylum, withholding of removal, and withholding of removal under the United Nations Convention Against Torture ("CAT").

The issues presented on appeal are (1) whether the BIA's determination, that "Honduran schoolboys who conscientiously refuse to join gangs" did not constitute a "particular social group," was a permissible construction of the controlling statute; (2) whether substantial evidence supports the BIA's determination that Gomez was not persecuted on account of his political opinion; and (3) whether substantial evidence supports the BIA's determination that Gomez was not entitled to withholding of removal under the CAT.

We review the administrative fact findings of the agency "under the highly deferential substantial evidence test." *Silva v. U.S. Att'y Gen.*, 448 F.3d 1229, 1236 (11th Cir. 2006) (quoting *Adefemi v. Ashcroft*, 386 F.3d 1022, 1026-27 (11th Cir. 2004) (en banc)). "[W]e review the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1255 (11th Cir. 2006) (citation omitted). The agency's factual findings are conclusive "unless the record

demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary." *Fahim v. U.S. Att'y Gen.*, 278 F.3d 1216, 1218 (11th Cir. 2002) (internal quotations and citation omitted). We review legal determinations *de novo*. *Li v. U.S. Att'y Gen.*, 488 F.3d 1371, 1374 (11th Cir. 2007).

To qualify for asylum or withholding of removal, Gomez must establish that he has a well-founded fear that, if removed to his home country, he will be persecuted "on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id.*; 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)(A), 1231(b)(3)(A). Gomez argues that, if he returns to Honduras, he will face persecution because of his membership in the "particular social group" comprised of "Honduran schoolboys who conscientiously refuse to join gangs."

To qualify as a "particular social group" under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, a group must be defined by a "shared characteristic . . . that the members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences." *Castillo-Arias v. U.S. Att'y Gen.*, 446 F.3d 1190, 1193, 1196 (11th Cir. 2006) (citing *Matter of Acosta*, 19 I. & N. Dec. 211, 233 (BIA 1985), *overruled on other grounds by Matter of Mogharrabi*, 19 I. & N. Dec. 439, 447 (BIA 1987)) (internal quotation marks omitted). We have also held that the

3

group must have sufficient "social visibility," and that the "particular social group" persecution basis should not be defined so broadly that it becomes "a catch-all for all groups who might claim persecution." *Castillo-Arias*, 446 F.3d at 1197.

In *Castillo-Arias*, we held that noncriminal informants working against a Columbian drug cartel were not a "particular social group" under the INA. *Id.* at 1196-98. We reasoned, *inter alia*, that (1) noncriminal informants opposing drug cartels lacked the requisite social visibility, (2) the group was too numerous and inchoate, and (3) even if the group's members became recognizable after their activities were disclosed to the cartel, "their defining attribute is their persecution by the cartel," and thus recognizing them as members of a "particular social group" would render that definition a "catch all." *Id.* at 1197-98.

Applying this definition of "particular social group," we conclude that Gomez cannot show that his group qualifies. Honduran schoolboys who refuse to join gangs are not a socially visible group, and are, additionally, too numerous and inchoate. *See Matter of S-E-G-*, 24 I. & N. Dec. 579, 582-83 (BIA 2008) (stating that Salvadoran youths who reject or resist membership in MS-13 are neither socially visible nor part of a group with "particular and well-defined boundaries"); *Matter of E-A-G-*, 24 I. & N. Dec. 591, 594-95 (BIA 2007) ("Persons who resist

4

joining gangs have not been shown to be part of a socially visible group within Honduran society."). Moreover, Gomez's purported group is so broad and persecution-defined that recognizing it under the INA would permit the "particular social group" persecution basis to become a "catch all" ground for all persons alleging persecution in Honduras who cannot establish refugee status under any of the other recognized grounds. Accordingly, we agree with the BIA's determination that "Honduran schoolboys who conscientiously refuse to join gangs" does not constitute a "particular social group," and conclude it was a permissible construction of the controlling statute.

Gomez next argues that substantial evidence does not support the BIA's determination that he was not persecuted on account of his political opinion. We agree with the government that the record evidence in this case is not so overwhelming that a reasonable fact finder would be compelled to conclude that Gomez was persecuted on account of his political opinion.

The record demonstrates that the MS-13 were trying to recruit Gomez, and his encounters with the MS-13 were due to his refusal to join the gang. Moreover, there is no record evidence demonstrating that Gomez was politically active against gangs or that he possessed a political opinion or had one imputed to him by the MS-13 gang members. Thus, because the record contains substantial

evidence to support the BIA's determination, the petition for review is due to be denied.

Finally, Gomez argues that he is entitled to CAT relief because it is more likely than not, based on the threats and assaults he had already experienced by the MS-13, that he will be subjected to severe pain or suffering if he is returned to Honduras.

We conclude from the record that the BIA correctly denied CAT relief. First, the physical violence Gomez suffered does not meet the definition of torture. Second, although Gomez's testimony was credible that the police did nothing, the record evidence demonstrates that the Honduran government has taken steps to address gang violence. Because the record evidence does not compel the finding that the Honduran government acquiesced in the arguably mental torture Gomez experienced, Gomez cannot establish his entitlement to CAT relief. Accordingly, we deny Gomez's petition for CAT relief.

**PETITION FOR REVIEW DENIED.**