# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-60638

United States Court of Appeals
Fifth Circuit

**FILED**

December 8, 2015

Lyle W. Cayce
Clerk

PAUL ANTHONY ROACH,

Petitioner,

v.

LORETTA LYNCH, Attorney General of the United States,

Respondent.

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A026 060 259

Before HIGGINBOTHAM, OWEN, and ELROD, Circuit Judges.

PER CURIAM:[*]

Paul Roach, a native and citizen of Jamaica, petitions this court to review the Board of Immigration Appeals' (BIA) order dismissing his appeal from the immigration judge's (IJ) denial of his applications for asylum, withholding of removal, and protection under the Convention Against Torture. Because we defer to the IJ's adverse credibility determination and find no evidence compelling us to reverse the BIA's dismissal of Roach's appeal, we DENY Roach's petition for review.

---

[*] Pursuant to Fifth Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Fifth Circuit Rule 47.5.4.

No. 14-60638

## I.

Petitioner Roach, a native and citizen of Jamaica, last entered the United States in the 1980s as a teenager.  In 2010, Roach was convicted of the Texas offense of possession of between 50 and 2,000 pounds of marijuana.  In 2012, after Roach pleaded guilty to another possession of marijuana charge in Ohio, he was issued a Notice to Appear that charged him with removability under 8 U.S.C. § 1182(a)(6)(A)(i) as an alien present in the United States without admission or parole. At the hearing that followed, the IJ sustained the charge of removability.  At the hearing, Roach stated that he feared persecution or torture in Jamaica, and the IJ provided Roach with an asylum application. Roach applied for asylum, withholding of removal, and protection under the Convention Against Torture (CAT).  Roach provided three grounds for his claims: (1) he feared that his homosexual identity would lead to persecution by the private citizens and government of Jamaica; (2) he feared harm by gang members from his childhood neighborhood because Roach had attempted to testify against one of the gang members when Roach was a child; and (3) he feared harm by gang members because of his "neutral" political opinion.

In the declaration in support of his application, Roach stated that he identified as homosexual, though he had never been "outwardly visible as gay." Roach stated that he had been sexually abused as child by an adult male and that his homosexual identity was rooted in that abuse.  Roach stated that he feared that returning to Jamaica would subject him to harm in light of the "homophobic [and] vigilante mind-set" of the Jamaican people and the illegality of homosexual activity under Jamaica law.

Roach also stated in his declaration that he feared harm from gang members against whom he had attempted to testify before he left Jamaica. Roach explained that when he was a child, a gang in his neighborhood had shot

2

No. 14-60638

and killed Roach's brother, and Roach witnessed the murder. The gang member who killed Roach's brother was criminally charged, and Roach agreed to testify against the gang member at trial, but every time Roach got on the stand, he started crying and could not testify. As a result, the charges against the gang member were dismissed. After the trial, Roach said he lived with his aunt in a different neighborhood and then later came to the United States.

At the hearing for Roach's application, Roach also testified that he feared harm from gangs because of his political opinion, which he characterized as "neutral." Roach stated that the gangs are connected to the politicians and the police in Jamaica and that if he returned to Jamaica, he "would either have to join the gang and be assimilated into the party or they would assume since I am of neutral political opinion that I could be or I could become a member of the opposing party so therefore, they would persecute me based on that." Roach also testified about his use of aliases while living in the United States and stated that he could not "recall [all] of them." Roach admitted that he had obtained a driver's license under the alias Donavan Smart from someone who "was sympathetic to [his] plight." Roach also admitted that he had falsely told immigration authorities that his named was Donavan Smart and that he was from the U.S. Virgin Islands. With regard to Roach's assertion that he identified as homosexual, the IJ asked for further, corroborating proof of that identification because Roach had three biological children from different women and had been married to a woman. Roach offered no further proof.

At the conclusion of the hearing, the IJ denied Roach's request for asylum because the request was untimely. The IJ denied withholding of removal and CAT protection because the IJ found that Roach was not credible with regard to his assertions of homosexuality and because Roach had otherwise failed to proffer sufficient evidence to show his eligibility for relief.

3

Roach appealed the IJ's decision to the BIA. The BIA upheld the IJ's denial of asylum as time barred but remanded the other two requests so the IJ could further clarify the adverse credibility determination.

On remand, Roach again appeared for a merits hearing, but declined the IJ's invitation to present additional evidence in support of his requests for relief. The IJ again denied Roach's requests for relief and again made an adverse credibility determination, this time citing three separate bases for that determination. First, the IJ explained that Roach's use of aliases while living in the United States and his providing false identification information to DHS officials undermined his credibility. Second, the IJ pointed to inconsistencies and omissions in Roach's testimony before the IJ about his alleged childhood sexual abuse, when compared to previous statements Roach had made to medical professionals. Third, the IJ found that the "overwhelming majority" of Roach's assertions "were wholly unsupported by any evidence." The IJ pointed out that "despite the fact that the majority of his friends and family reside in the United States," Roach failed to corroborate his claim of homosexual identity. The IJ explained that a sexual identity claim was subject to the same requirements of any other claim under the REAL ID Act, which requires that the applicant testify credibly and provide corroborating evidence when possible.

The IJ then considered evidence related to Roach's two other grounds for relief, which were based on Roach's fear of gang violence. With regard to withholding of removal, the IJ determined that Roach had failed to show that he had suffered past persecution in Jamaica from gangs or had a well-founded fear of future persecution that had a nexus with the legal requirements for relief. Specifically, the IJ found that Roach could not establish that he was a member of a "particular social group," either as one who had attempted to

testify against a gang member, or as one with a "neutral" political opinion who would be a target of gang recruitment. With regard to the requested CAT protection, the IJ determined that Roach had failed to provide any evidence of past "torture"—as defined under the CAT, which does not include purely private activity—and that Roach's assertions of future torture were too speculative for relief.

Roach again appealed to the BIA, and the BIA dismissed Roach's appeal. The BIA upheld the IJ's adverse credibility determination related to Roach's testimony about his claimed homosexual identity. The BIA held that, even assuming that Roach's fear of gang violence was credible, Roach's evidence did not prove that he was eligible for withholding of removal or CAT protection because the evidence failed to show past persecution, a well-founded fear of future persecution, past torture, or that it was more likely than not that future torture would occur.

Roach filed a timely petition for review, arguing that the BIA erred in adopting the IJ's adverse credibility determination and in holding that it was reasonable for the IJ to require Roach to provide corroborating evidence to support his testimony about his claimed homosexual identity. Roach also argues that the BIA erred in determining that his evidence was insufficient to establish his eligibility for withholding of removal and CAT protection.[1]

## II.

We generally review only the BIA's decision, but we "may review the IJ's findings and conclusions if the BIA adopts them." *Wang v. Holder*, 569 F.3d 531, 536 (5th Cir. 2009). The BIA's (or, if applicable, the IJ's) factual findings are reviewed under a "substantial evidence standard, which requires that the

---

[1] Roach does not appeal the denial of his asylum claim for untimeliness, so we review only Roach's requests for withholding of removal and protection under the CAT.

No. 14-60638

decision of the BIA be based on the evidence presented and that the decision be substantially reasonable." *Orellana-Monson v. Holder*, 685 F.3d 511, 517–18 (5th Cir. 2012). Under this standard, "reversal is improper unless the court decides not only that the evidence supports a contrary conclusion, but also that the evidence *compels* it." *Id.* at 518; *see Zhang v. Gonzales*, 432 F.3d 339, 343–44 (5th Cir. 2005) (citing *INS v. Elias–Zacarias*, 502 U.S. 478, 481 (1992)).

**A.**

Roach's first two arguments challenge the BIA's deference to the IJ's adverse credibility determination and the BIA's holding that it was permissible for the IJ to require evidence corroborating Roach's testimony that he identified as homosexual. First, with regard to credibility determinations, "this court cannot substitute its judgment for that of the BIA or IJ." *Orellana-Monson*, 685 F.3d at 518. But an adverse credibility ruling is not entitled to our deference unless it is "supported by specific and cogent reasons derived from the record." *Zhang*, 432 F.3d at 344. An IJ "may rely on *any* inconsistency or omission in making an adverse credibility determination," and we "defer . . . to an IJ's credibility determination unless, from the totality of the circumstances, it is plain that no reasonable fact-finder could make such an adverse credibility ruling." *Wang*, 569 F.3d at 538. It is the petitioner's burden to demonstrate that the *evidence* compels a contrary conclusion.[2] *Zhao v. Gonzales*, 404 F.3d 295, 306 (5th Cir. 2005) (emphasis added).

Here, the IJ gave three specific and cogent bases derived from the record for its adverse credibility determination: (1) Roach's admission that he used multiple aliases while living in the United States and provided false

---

[2] In other words, it is not enough for the petitioner to make bare assertions that the IJ's credibility determinations were wrong; rather, he must use evidence in the record to challenge credibility determinations. As discussed *infra*, Roach fails to point to any evidence that compels a contrary conclusion.

information to immigration officials undermined his credibility; (2) There were inconsistencies and omissions in Roach's testimony about the alleged childhood sexual abuse, when compared to previous statements Roach had made to medical professionals; and (3) The "overwhelming majority" of Roach's assertions "were wholly unsupported by any evidence" despite the fact that the majority of Roach's friends and family reside in the United States and could supply such corroborating evidence.  *See* 8 U.S.C. § 1158(b)(1)(B)(iii) (providing factors to use when making a credibility determination and noting that the trier of fact may make a credibility determination based on the "totality of the circumstance" and "any . . . relevant factor").  Because the IJ's determination is supported by such valid bases, we "cannot substitute [our] judgment for that of the BIA or IJ."  *Orellana-Monson*, 685 F.3d at 518.

Roach also argues that it was error for the BIA to hold that the IJ could require Roach to provide evidence corroborating his testimony that he identified as homosexual.  Both statutory and case law make clear that the IJ could require such corroborating evidence, even if the IJ found Roach's testimony credible.  *See* 8 U.S.C. § 1158(b)(1)(B)(ii) (stating that while credible testimony alone may be sufficient to sustain an applicant's burden without corroborating evidence, the trier of fact may require the applicant to provide corroborating evidence to sustain his burden, even if his testimony is deemed credible);[3] *Rui Yang*, 664 F.3d at 585 (holding that the BIA may require an applicant to provide corroborating evidence of a claim for asylum even if an

---

[3] The BIA explained that Roach could have provided supporting documents or called supporting witnesses to corroborate Roach's assertions of homosexual identity.  Our authority to review determinations with respect to the availability of evidence is limited under the REAL ID Act, which states that "[n]o court shall reverse a determination made by a trier of fact with respect to the availability of corroborating evidence . . . unless the court finds . . . that a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable."  8 U.S.C. § 1252(b)(4); *Rui Yang v. Holder*, 664 F.3d 580, 587 (5th Cir. 2011).  We do not so find.

applicant has testified credibly).   As the IJ stated, a claim based on sexual identity is subject to the same requirements of any other basis for a claim arising under the REAL ID Act—that is, Roach must testify credibly and, if the trier of fact determines that corroborative evidence is required, Roach must provide such evidence unless he cannot reasonably obtain it.  *See* 8 U.S.C. § 1158(b).  We defer to the adverse credibility determination adopted by the BIA, as the totality of the circumstances here do not compel a contrary conclusion.  *See Wang*, 569 F.3d at 538; *Zhao*, 404 F.3d at 306.

## B.

Assuming, as did the BIA, that Roach's testimony with regard to his fear of gang violence was credible, we agree with the BIA that Roach nevertheless failed to provide sufficient evidence to establish his eligibility for either withholding of removal or CAT protection.

Roach asserted that two bases made him eligible for withholding of removal: (1) Roach feared gang violence because when Roach was a child, he had attempted to testify against a member of his neighborhood gang; and (2) Roach feared gang violence because he held a "neutral" political opinion, which Roach alleged would subject him to gang recruitment and gang violence if he resisted that recruitment.

To be eligible for withholding of removal, an applicant must show: (1) that he has suffered "past persecution in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion," or, if no such past persecution can be established, (2) that it is "more likely than not" that he will suffer a "future threat to life or freedom" "on account of race, religion, nationality, membership in a particular social group, or political opinion."  8 C.F.R. § 1208.16(b)(1)(i), (iii); *see Ramirez-Mejia v. Lynch*, 794 F.3d 485, 592 (5th Cir. 2015).  Here, Roach did not provide

evidence of a past threat on account of any of the eligible bases but did assert that a future threat was imminent on account of his membership in a particular social group as a prior witness against a gang member and on account of his "neutral" political opinion.

First, Roach claimed that because he attempted to testify against a gang member from his childhood neighborhood, gang members in that neighborhood would persecute him upon his return. The IJ asked Roach whether he could move to a different neighborhood, and Roach admitted that he could. The IJ concluded that Roach's evidence did not meet the high standard of showing that it was "more likely than not" that Roach would be persecuted by gangs for his attempt to testify against a gang member approximately 30 years ago, especially because Roach would not have to return to his childhood neighborhood.[4] *See* 8 C.F.R. § 1208.16(b)(3)(i) ("In cases in which the applicant has not established past persecution, the applicant shall bear the burden of establishing that it would not be reasonable for him or her to relocate, unless the persecutor is a government or is government-sponsored."). The record

---

[4] The IJ also found that "[w]itnesses do not constitute a particular social group under the law." We note that we have held, albeit in an unpublished opinion, that being a mere witness to a crime does not place an individual in a particular social group under the INA. *See Calel-Chitic v. Holder*, 333 F. App'x 845, 847–48 (5th Cir. 2009) (holding that being a witness of a crime such that "a gang of local criminals . . . threatened" the petitioner "because they do not want to be caught and convicted" was not a cognizable social group under the INA, as "[c]riminal retaliation such as this is not a basis for asylum, and holding otherwise would transform asylum into a garden variety witness protection program"); *cf. Romilus v. Ashcroft*, 385 F.3d 1, 6 (1st Cir. 2004) ("The [Immigration and Nationality Act] is not intended to protect aliens from violence based on personal animosity."). But one of our sister circuits has specifically held that "individuals who testify against gang members" is a sufficiently visible and particular social group to constitute a cognizable social group under the Law. *See Henriquez-Rivas v. Holder*, 707 F.3d 1081, 1092 (9th Cir. 2013) (en banc).

We need not reach this thorny issue because even assuming *arguendo* that individuals who testify against gang members constitute a particular social group under the law, Roach's evidence was otherwise insufficient to establish his eligibility for withholding of removal.

before us does not compel a contrary conclusion. *See, e.g.*, *Flores-Linares v. Gonzales*, 200 F. App'x 330, 332 (5th Cir. 2006) (holding that substantial evidence supported the finding that petitioner could avoid alleged future persecution by gang by relocating to another part of Guatemala and therefore declined to reach the issue of whether his prior testimony against the gang established membership in a cognizable social group).

Second, Roach asserted that his "neutral" political opinion would subject him to gang violence because he would be forced to either join the gang or be persecuted based on his refusal to join the gang. The BIA correctly noted that Roach's "political opinion" claim was, effectively, a claim that Roach would be persecuted for his refusal to join a gang.[5] The BIA held that Roach could not establish that he was a member of a "particular social group within the meaning of the Act" because individuals who refuse to join a gang are not a socially distinct group. We agree. We have held that "people refusing to join gangs" is not a cognizable social group. *Orellana-Monson*, 685 F.3d at 516, 521–22 (holding that "Salvadoran males, between the ages of 8 and 15," recruited by gangs but who refused to join did not constitute a "particular social group" under the INA).[6]

---

[5] The IJ explained that the evidence did not show that the gang violence would be motivated purely by political motivations but, rather, by Roach's refusal to join the gang.

[6] Some of our sister circuits have held the same. *See, e.g.*, *Gaitan v. Holder*, 671 F.3d 678, 682 (8th Cir. 2012) (holding that "young males from El Salvador who have been subjected to recruitment" by gangs and who "have rejected or resisted membership in the gang based on personal opposition to the gang" was not "sufficiently narrowed to cover a discrete class of persons who would be perceived as a group by the rest of society" and thus was not a particular social group); *Zelaya v. Holder*, 668 F.3d 159, 165–67 (4th Cir. 2012) (holding that "young Honduran males who refused to join gangs" and who had a "an identifiable tormenter within the gang" did not constitute a particular social group); *Larios v. Holder*, 608 F.3d 105, 109 (1st Cir. 2010) (holding that "youth resistant to gang recruitment" was not socially visible and insufficiently particular to constitute particular social group); *Gomez-Benitez v. U.S. Attorney General*, 295 F. App'x 324, 326 (11th Cir. 2008) (holding that "Honduran schoolboys who refuse to join gangs" did not constitute a social group because the group was not socially visible and was "too numerous and inchoate").

No. 14-60638

To be eligible for CAT protection, a petitioner need not assert membership in any protected group but, rather, must prove that it is "more likely than not" that he will be "tortured" if removed. 8 C.F.R. § 208.16(c)(2); *see Chen*, 470 F.3d at 1139. "Torture" must be "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 208.18 (a)(1); *see Chen*, 470 F.3d at 1139. Roach asserted evidence that he may be persecuted by gang members and that gang members have ties to some corrupt politicians. The BIA found that this evidence was insufficient to prove that Roach will "more likely than not" be tortured by government officials in Jamaica. We find no evidence that compels a contrary conclusion.

**III.**

Because no evidence on the record compels us to reverse the BIA's dismissal of Roach's appeal, the petition for review is DENIED.