# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
October 4, 2023

Lyle W. Cayce
Clerk

————————

No. 22-60529

————————

Evelin Johana Morales-Perez,

*Petitioner*,

*versus*

Merrick Garland, *U.S. Attorney General*,

*Respondent*.

———————————————————

Petition for Review of an Order of the
Board of Immigration Appeals
Agency No. A206 796 980

———————————————————

Before Stewart, Dennis, and Wilson, *Circuit Judges*.

Per Curiam:[*]

Petitioner seeks review of an order of the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ") decision that she is ineligible for immigration relief. Because we conclude that substantial evidence supports the BIA's order denying relief to Petitioner, we DENY in part and DISMISS in part the petition for review.

————————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-60529

## I. FACTUAL & PROCEDURAL BACKGROUND

In 2014, Evelin Johana Morales-Perez, a native and citizen of Honduras, entered the United States without authorization. She was then placed in removal proceedings where she admitted the allegations and conceded removability. *See* 8 U.S.C. § 1182(a)(6)(A)(i) ("An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible."). She applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). In her application for relief, she claimed that she had been persecuted by a gang on account of her membership in the particular social group ("PSG") of "perceived witnesses in Honduras."[1]

Morales-Perez and her 13-year-old daughter Angie Nicole Castellano-Morales ("Angie") testified at the merits hearing. Morales-Perez testified that she first came to the United States in 2008, returned to Honduras in 2010, and once again returned to the United States in 2014. She claimed that in 2011, when she was living in Honduras, a gang member attempted to rob her near her house. The robbery was unsuccessful because a passerby intervened; however, she suffered an injury to her eye as a result of the incident. She further stated that she called the police, but they did not respond to her report of the incident.

Morales-Perez further testified that three years later, in 2014, gang members attempted to recruit Angie, who was only eight years old at the

---

[1] Although Morales-Perez characterized her proposed PSGs in several different ways before the IJ, the only proposed PSG that was considered by the BIA, and is thus reviewable on appeal, was her PSG of "perceived witnesses in Honduras." *See* 8 U.S.C. § 1252(d)(1); *Hernandez-De La Cruz v. Lynch*, 819 F.3d 784, 786 (5th Cir. 2016) (declining to address Petitioner's arguments that were not first presented to the BIA).

time. The gang allegedly approached Angie outside of her school on two or three occasions and threatened to kill her family if she refused to join. Morales-Perez then removed Angie from school in an effort to protect her from further harassment by the gang.

Later that year, Morales-Perez's cousin was killed after being shot by an MS gang member nicknamed Banana. Morales-Perez heard the gunshots, so she went outside where she saw the shooter. Because she had seen Banana and knew his identity, he threatened to kill her family if she called the police. She did not report the incident to the police and left with Angie for the United States the following day.

According to Morales-Perez, after she left Honduras, her partner and the father of her children remained there with their two sons. She alleged that the gang later tried to recruit one of her sons. Thereafter, the father and sons briefly relocated within Honduras but ultimately fled to the United States in 2019 where they now live with Morales-Perez and Angie.

Moralez-Perez conceded that the gang did not physically harm her after the 2011 attempted robbery and did not try to rob or attack her any other time. She also stated that the gang never physically harmed her partner or her children, and she never heard anything from or related to Banana after her cousin's murder. Nevertheless, she claimed that she feared returning to Honduras because the gang could find her, and the police would not protect her.

The IJ denied all requested relief and ordered that Morales-Perez be removed to Honduras. With respect to asylum and withholding of removal, the IJ concluded that she failed to state a cognizable PSG. It then denied CAT relief on the basis that she failed to demonstrate a likelihood of torture or that any potential torture would involve the requisite state action. The BIA adopted and affirmed the IJ's decision for the reasons stated therein, with the

No. 22-60529

exception of certain alternative findings that the BIA deemed unnecessary to address.[2] Morales-Perez filed a timely petition for review.

## II. STANDARD OF REVIEW

This court reviews the BIA's decision and considers the IJ's decision only to the extent it influenced the BIA. *Orellana-Monson v. Holder*, 685 F.3d 511, 517 (5th Cir. 2012). The BIA's factual findings are reviewed for substantial evidence, and its legal conclusions are reviewed de novo. *Id.* at 517–18. The substantial evidence test "requires only that the BIA's decision be supported by record evidence and be substantially reasonable." *Omagah v. Ashcroft*, 288 F.3d 254, 258 (5th Cir. 2002). This court will not reverse the BIA's factual findings unless the evidence compels a contrary conclusion. *Orellana-Monson*, 685 F.3d at 518.

## III. DISCUSSION

On appeal, Morales-Perez argues that the IJ erred (1) in holding that she was not entitled to asylum or withholding of removal because she did not suffer past harm rising to the level of persecution, or a well-founded fear of future persecution, based on her membership in a PSG, and (2) in concluding that she failed to demonstrate entitlement to protection under CAT.[3] We disagree.

---

[2] *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.").

[3] Morales-Perez also argues that the gang imputed an anti-gang political opinion to her. During the IJ proceedings, however, she did not claim political opinion as a protected ground and the BIA did not address a claim based on political opinion. Thus, to the extent she now raises a claim of persecution based on political opinion on appeal, we lack jurisdiction to consider it because it is unexhausted. *See* 8 U.S.C. § 1252(d)(1); *Hernandez-De La Cruz*, 819 F.3d at 786. For these reasons, her claim on this issue is dismissed.

*A. Asylum & Withholding of Removal*

Asylum may be granted to a noncitizen who is unable or unwilling to return to her home country because of past persecution or a well-founded fear of persecution on account of "race, religion, nationality, membership in a particular social group, or political opinion[.]" *Orellana-Monson*, 685 F.3d at 518. The applicant must establish that a statutorily protected ground was or will be at least one of the central reasons behind her persecution. *Id.* The ground does not have to be the only reason for harm, but it cannot be "incidental, tangential, superficial, or subordinate to another reason for harm." *Shaikh v. Holder*, 588 F.3d 861, 864 (5th Cir. 2009).

For a PSG to be cognizable, it must be (1) comprised of persons who share a common immutable characteristic, (2) defined with particularity, and (3) socially visible or distinct within the society at issue. *See Gonzales-Veliz v. Barr*, 938 F.3d 219, 229 (5th Cir. 2019); *Hernandez-De La Cruz v. Lynch*, 819 F.3d 784, 786, 787 n.1 (5th Cir. 2016). The third requirement of social distinction "is determined by the extent to which members of a society perceive those with the characteristic in question as members of a social group." *Hernandez-De La Cruz*, 819 F.3d at 786 (internal quotation marks and citation omitted).

To be entitled to withholding of removal, the applicant must demonstrate a clear probability of persecution if returned to his home country on account of the same statutory grounds applicable to asylum claims. *Majd v. Gonzales*, 446 F.3d 590, 595 (5th Cir. 2006). Because withholding of removal has a higher standard than asylum, "failure to establish eligibility for asylum is dispositive of claims for withholding of removal." *Id.*

Morales-Perez contends that she was targeted by the gang due to her immutable status as an identifiable Honduran witness to a gang killing because she received the death threat from Banana after witnessing him kill

her cousin. With respect to social distinction, she asserts that a group consisting of "Honduran witnesses to MS gang murder" is "a discrete but visible class of persons . . . who are preyed upon by Honduran criminals due to their status within that discrete group." The IJ and BIA disagreed and determined that Morales-Perez failed to establish that her proposed PSG was socially distinct within Honduran society. We agree and hold that substantial evidence supports the BIA's conclusion that Morales-Perez failed to establish social distinction. *See Orellana-Monson*, 685 F.3d at 517–18.

Morales-Perez's claims that she witnessed a murder may explain why she was threatened, but they do not show that her proposed PSG was socially distinct. *See Hernandez-De La Cruz*, 819 F.3d at 787 ("Given this finding regarding the broad group of people who may be subjected to similar treatment from the [criminal syndicate], Petitioner's proposed particular social group is not sufficiently particular."). Moreover, as the BIA observed, the gang's acts that she describes "are examples of criminal activity, which, without more, is insufficient to establish persecution for asylum purposes." *See Vasquez-De Lopez v. Lynch*, 620 F. App'x 293, 295 (5th Cir. 2015) (unpublished) (explaining that "[c]onduct that is driven by criminal . . . motives does not constitute persecution") (citing *Thuri v. Ashcroft*, 380 F.3d 788, 792–93 (5th Cir. 2004)). Thus, she has failed to show that the record compels the conclusion that witnesses to a gang's crimes are perceived in Honduras substantially differently than the general Honduran population that resists the gang or otherwise threatens the gang's interests. *See Hernandez-De La Cruz*, 819 F.3d at 787 ("Although a local journalist reported that Petitioner had been beaten, it does not follow that his proposed group of former informants has 'social distinction' or would be perceived as a particular group, because . . . the members of Petitioner's proposed group are not substantially different from anyone else in the general population who resists the [criminal syndicate] or otherwise threatens their interests."); *see*

*also Erazo-Flores v. Garland*, No. 22-60177, 2023 WL 2612624, at *3 (5th Cir. Mar. 23, 2023) (unpublished) ("Groups based on being a witness lack the required social distinction to qualify as a PSG, as members of such groups are not substantially different from anyone else in the general population who resist criminal organizations." (internal quotation marks and citation omitted)); *Esquibel-Segovia v. Garland*, No. 20-60890, 2022 WL 2752217, at *2 (5th Cir. July 14, 2022) (unpublished) ("We see nothing in the BIA's decision or underlying record suggesting that the proposed PSG of 'witnesses to [murder]' possesses the requisite social distinction to support a viable asylum claim."); *Flores de Mundo v. Barr*, 770 F. App'x 240, 241 (5th Cir. 2019) (unpublished) ("The record does not compel the conclusion that [Petitioner's] society views witnesses to [the gang's] crimes as substantially different from anyone else in the general population who resists [the gang] or otherwise threatens their interests, so we uphold the BIA's rejection of her claim for withholding of removal." (internal quotation marks and citation omitted)).[4] Because Morales-Perez fails on the issue of social distinction, she cannot show that the BIA erred in concluding that her proposed PSG was incognizable. *See Hernandez-De La Cruz*, 819 F.3d at 786–87. Consequently, she cannot demonstrate eligibility for asylum or withholding of removal, and we affirm the BIA's denial of those forms of relief.[5] *See Orellana-Monson*, 685 F.3d at 518; *see also Majd*, 446 F.3d at 595 (noting that withholding of removal

---

[4] *See Hernandez-De La Cruz*, 819 F.3d at 787 (recognizing that unpublished cases are persuasive authority).

[5] Although the Government contends that this court lacks jurisdiction to consider whether Morales-Perez failed to demonstrate past or potential harm rising to the level of persecution, we need not reach the issue because her failure to show that she presented a cognizable PSG is dispositive to her claims for asylum and withholding of removal. *See Bagamasbad*, 429 U.S. at 25 (explaining that courts and agencies are not required to make findings on issues that are not dispositive to the holding they reach).

has a higher standard than asylum thus the "failure to establish eligibility for asylum is dispositive of claims for withholding of removal").

### B. Convention Against Torture

Morales-Perez further maintains that the IJ failed to properly address the evidence showing that Honduran police officials were ineffective against death threats by gang members and would be unable or unwilling to protect her if she returned to Honduras. Noting that the police did nothing after she reported the attempted robbery in 2011, she contends that future torture would more likely than not occur based on the death threat she received after witnessing the killing of her cousin in 2014. We are unpersuaded by her arguments.

To obtain protection under the CAT, the applicant must "establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2); *accord Munoz-Granados v. Barr*, 958 F.3d 402, 408 (5th Cir. 2020). Torture is defined, in relevant part, as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person . . . by, or at the instigation of, or with the consent or acquiescence of, a public official acting in an official capacity or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1); *accord Ramirez-Mejia v. Lynch*, 794 F.3d 485, 493 (5th Cir. 2015). Thus, the applicant must show both that (1) she more likely than not would suffer torture if she returned to her country and (2) sufficient state action would be involved in that torture. *See Tamara-Gomez v. Gonzales*, 447 F.3d 343, 350–51 (5th Cir. 2006).

Threats that lack immediacy are insufficient to constitute persecution for asylum and withholding of removal. *See Munoz-Granados*, 958 F.3d at 407; *see also Gjetani v. Barr*, 968 F.3d 393, 398–99 (5th Cir. 2020) (upholding determination that threats on three occasions, one of which resulted in

physical injury, did not qualify as persecution because no pattern of sustained pursuit was involved). It so follows that such threats also fail to meet the higher bar of torture. *See Efe v. Ashcroft*, 293 F.3d 899, 907 (5th Cir. 2002) ("[The] CAT does not require persecution, but the higher bar of torture."); *see also* 8 C.F.R. § 1208.18(a)(2) ("Torture is an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture.").

On this issue, the IJ determined that Morales-Perez failed to prove that it was more likely than not that she would be tortured, by or with the consent or acquiescence of a government official, if she returned to Honduras. *See* 8 C.F.R. § 1208.16(c)(2). The BIA upheld the IJ's findings. We agree that she has failed to make the requisite showing.

Morales-Perez testified that when Banana noticed that she witnessed the shooting, he told her that he would kill her family if she called the police. She satisfied Banana's demand, however, by not reporting the killing to the police. Even though she fled the country with her daughter the day after the murder, her partner remained in Honduras with their two sons until 2019 and no one in the family was ever threatened again by Banana or anyone else with respect to the murder. Apart from Morales-Perez being hit in the eye during the unrelated attempted robbery incident in 2011, the record confirms that no one in Honduras ever physically harmed her or her children. In other words, the evidence does not "compel" the conclusion that the death threat from Banana was a continuing one. *See Orellana-Monson*, 685 F.3d at 518. Moreover, "[g]eneralized country evidence tells us little about the likelihood [that] state actors will torture any particular person," including Morales-Perez. *See Qorane v. Barr*, 919 F.3d 904, 911 (5th Cir. 2019); *Morales v. Sessions*, 860 F.3d 812, 818 (5th Cir. 2017) ("Petitioner's presentation of various news articles and reports describing [her country] as particularly dangerous for unnamed women and children warrants our sympathy, but the

No. 22-60529

allegations contained in those articles and reports are too general to warrant relief under the Convention Against Torture." (internal quotation marks and citations omitted)). For these reasons, we conclude that substantial evidence supports the BIA's holding that Morales-Perez has failed to show that, if she returns to Honduras, it is more likely than not that she will be tortured by or with the consent or acquiescence of a government official. *See* 8 C.F.R. § 1208.16(c)(2); *Tamara-Gomez*, 447 F.3d at 350–51. She is therefore not entitled to CAT relief. *See Munoz-Granados*, 958 F.3d at 408.

## IV. CONCLUSION

For the foregoing reasons, the petition for review is DENIED in part and DISMISSED in part.